# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-18-00054-CR
## NO. 03-18-00055-CR
## NO. 03-18-00056-CR

**Tyquan Guzman, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 403RD JUDICIAL DISTRICT
### NOS. D-1-DC-17-300531, D-1-DC-17-300634 & D-1-DC-17-300635
### HONORABLE BRAD URRUTIA, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Tyquan Guzman of two counts of aggravated robbery and one count of aggravated kidnapping arising from incidents spanning a two-day crime spree. The jury assessed sentences of 5 years' imprisonment for each of the aggravated robbery offenses and 18½ years' imprisonment for the aggravated kidnapping offense. *See* Tex. Penal Code §§ 20.04, 29.03. The district court rendered judgments of conviction consistent with the jury's verdicts. On appeal, Guzman contends that the court erred by admitting evidence of extraneous conduct over his Rule 403 objection that the evidence was more prejudicial than probative. *See* Tex. R. Evid. 403. We will affirm the judgments of conviction.

**BACKGROUND**

Tyquan Hassan Guzman was indicted for three offenses arising from two events: an aggravated robbery against Robert Gilardi and an aggravated kidnapping and aggravated robbery of Wendy Gueorguiev committed two days after the robbery against Gilardi. All three indictments were consolidated for trial without objection.

Among the witnesses at trial were Guzman's victims, Gilardi and Gueorguiev, and the law enforcement officers who investigated the offenses. Gilardi testified that he wanted to buy a cell phone for his daughter and that he answered an online posting on a trading platform called OfferUp, where an individual later identified as Guzman had listed a cell phone for sale. Gilardi contacted Guzman and arranged to meet at a park on South First near Oltorf in Austin. When Gilardi arrived, Guzman was not there. Gilardi sent a message to Guzman, who changed the meeting location to a spot at the end of Durwood Street. After Gilardi drove there, Guzman stated that he wanted to show the phone to Gilardi inside the car. Although Gilardi preferred to exchange the phone in the open, he agreed. Then Guzman and another man got into Gilardi's car. Guzman pointed a gun at Gilardi and demanded all of Gilardi's money and his personal cell phone. Gilardi handed his cell phone and $250 to Guzman, who fled on foot. Gilardi returned to the park and borrowed someone's phone to call 911. A recording of that call was admitted into evidence, and Gilardi identified Guzman in court as the person who took his money and phone at gunpoint.

Regarding the second event, Gueorguiev testified that she pulled over to take a nap in her car near Riverside Drive after she became tired following a night out with friends. Gueorguiev woke around 3:00 a.m. or 4:00 a.m. to see a young man, whom she later identified in court as

2

Guzman, staring at her. He told her to get into the passenger seat and told her that he had a gun, which she saw in his hand. Guzman proceeded to drive the car north on IH-35. During the drive, Guzman told Gueorguiev that he should make her "suck his dick." To escape, Gueorguiev jumped out of the moving car and slid onto the pavement of IH-35 near Airport Drive, sustaining a broken elbow and numerous other injuries.[1] After unsuccessfully trying to flag down passing motorists, Gueorguiev sought help by knocking at the doors of some houses near the highway. Residents called 911. One resident requested EMS for Gueorguiev and reported to police the information that Gueorguiev provided about the facts of the offense and the year, make, and model of her stolen car.

In addition to Gilardi's and Gueorguiev's testimony, the jury also heard about an incident of extraneous conduct for which Guzman had not been charged in which he approached a woman, Krystal Reeve, while she was in her car. This incident occurred a few hours after Guzman had awakened Gueorguiev in her car.[2] Reeve testified that after completing her night shift at work,

---

[1] Color photographs of Gueorguiev's injuries were admitted into evidence.

[2] The record of the trial contains a reference by the prosecutor directing Reeve's attention to "March 3rd"—not March 8th—as the date that Guzman approached Reeve near her apartment on Manchaca Road, across from an ACC parking garage. Guzman contends that this reference to March 3rd means that the incident involving Reeve occurred "some days before either of the charged offenses" and that "no connection was shown to the other two complainants." But the jury could have concluded that the March 3rd reference was a misstatement. It is inconsistent with the prosecutor's opening statement and closing argument, which noted that Reeve was approached within hours of the incident involving Gueorguiev. The March 3rd date is also inconsistent with Officer Donnie Manor's testimony that he encountered Guzman on March 8, 2017, detained him, and moved him to a second location where Reeve made a "field identification" of him before he went to jail. Further, the single-day chronology of events involving Gueorguiev and Reeve is supported by one of Guzman's recorded telephone calls from jail. In that recording, Guzman states that after Gueorguiev jumped out of the car, he parked the car by his mom's house, began walking, asked for a cigarette from a "bitch" that he saw smoking a cigarette, and after she refused, he walked to his "homeboy's house that's right around the corner from Crockett."

3

she parked her car at a car wash near her apartment and was smoking a cigarette when she was approached by a young man, whom she later identified as Guzman. He walked to her car and told her, "Let's fuck." Reeve rolled up her car window and drove to her apartment complex next door. Reeve testified that she was shaking as she parked her car and sat there while she continued smoking. In the apartment parking lot, Reeve saw Guzman walking behind her car, and he approached her again. This time, he banged on the car door, asking for a cigarette. Reeve stated that Guzman opened her car door while she tried to pull it closed and that she noticed him reaching for something black in his pocket. Reeve entered 911 on her cell phone and screamed at Guzman while honking her car's horn. Guzman fled. Reeve testified that police arrived within ten minutes. They apprehended Guzman, and Reeve testified that she identified him to police as the person who had been at her car.

Austin Police Department Officer Donnie Manor testified about his interaction with Reeve. He stated that on March 8, 2017, he arrested Guzman based on a female victim's description of a suspect in a possible robbery and sexual assault. Manor testified that he was checking the area for a person fitting the description provided when he saw Guzman walking in the middle of the roadway. Officer Manor detained him and then moved him to a second location where the victim, Reeve, made a "field identification" of him before he went to jail. Guzman had two knives in his pockets and a gun in his waistband when he was arrested. The gun was identified as a Taurus .25 caliber semiautomatic pistol that had its serial number removed and was unloaded when inventoried.

Austin Police Department Detective Thomas Howard testified about his investigation of Guzman. He stated that he obtained a search warrant for historical information from the OfferUp

4

app and linked Guzman's use of OfferUp to a modem at his mother's house. Detective Thomas interviewed Guzman, who stated that neither he nor his mother had a car, that he rode a bus to and from a friend's house near the location of the robbery, and that he was selling a cell phone on OfferUp. Guzman denied involvement in a robbery. However, without Detective Howard disclosing any details about the money stolen from Gilardi, Guzman asked why he would commit a robbery over $200. Detective Howard testified that Guzman repeated the question a couple of times before catching himself and stating something to the effect of "that was just an example."

After his interview with Guzman, Detective Howard considered searching for video footage from cameras at the bus station. But Detective Howard noticed that Guzman's property included a car key with a microchip that was found on him. Detective Howard testified that people who do not have cars typically do not have car keys. The car key reminded him "of a case we had from the same night where a person was carjacked and from that same kind of car."

Detective Howard testified that he listened to recorded telephone calls that Guzman made from jail to a girlfriend. Recordings of Guzman's calls from jail were admitted into evidence without objection. Detective Howard stated that in one of the calls, Guzman said that he got a new car and that he was driving with a female in the passenger side of the car when "the bitch jumped out" while they were "going a hundred on the highway." According to Detective Howard, Guzman also told his girlfriend where he parked the car, which was near where his mother lived, and told her to have a friend "move it before the cops find it." Detective Howard testified that he took the car key found on Guzman to a car that police found. Using that key, Detective Howard was able to unlock the car and start the ignition.

5

Detective Howard further testified without objection about another of Guzman's calls from jail referring to him asking for a cigarette. Detective Howard stated that from what he remembered, the incident involved Guzman walking up to somebody near a car wash. The person saw a gun, got scared, and called 911.

At the conclusion of the trial, the jury convicted Guzman on both counts of aggravated robbery against Gilardi and Gueorguiev and the count of aggravated kidnapping against Gueorguiev and assessed his sentences, and the district court rendered judgment on the jury's verdicts. This appeal followed.

## DISCUSSION

**No harmful error in admission of extraneous-conduct evidence**

On appeal, Guzman contends that the district court erred by admitting Reeve's testimony about his extraneous conduct over his Rule 403 objection. Texas Rule of Evidence 403 provides that even relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury; by considerations of undue delay; or by needless presentation of cumulative evidence. Tex. R. Evid. 403. When conducting a Rule 403 analysis, the trial court must balance: (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount

6

of time or merely repeat evidence already admitted. *Gigliobianco v. State*, 210 S.W.3d 637, 641–42 (Tex. Crim. App. 2006). We review a trial court's decision to admit or exclude evidence, as well as its decision as to whether the probative value of evidence was substantially outweighed by the danger of unfair prejudice, under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its determination lies outside the zone of reasonable disagreement. *Id*.

Here, even assuming without deciding that there were an abuse of discretion, we are satisfied that the admission of this extraneous evidence did not affect Guzman's substantial rights. *See* Tex. R. App. P. 44.2(b) (providing that any error that does not affect substantial rights must be disregarded). "A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict." *Schmutz v. State*, 440 S.W.3d 29, 39 (Tex. Crim. App. 2014). A defendant's substantial rights are not affected by the erroneous admission of evidence if the appellate court, after considering the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In light of the overwhelming evidence of Guzman's guilt, we are satisfied that the admission of the extraneous conduct evidence did not have a substantial and injurious influence in determining the jury's guilty verdict. *See Hernandez v. State*, 176 S.W.3d 821, 824 (Tex. Crim. App. 2005); *Motilla*, 78 S.W.3d at 358 (concluding that evidence of defendant's guilt is factor to be considered in any thorough harm analysis).

The evidence at trial supporting the jury's verdict was strong. The jury heard firsthand accounts from victims Gilardi and Gueorguiev establishing the elements of the offenses

Guzman committed against them. Their accounts were supported by evidence about the investigation conducted by law enforcement and Guzman's own words in his calls from jail. Notably, the defense objected to none of the witnesses' testimony at trial and acknowledged during closing, "I didn't have any questions because I had seen the evidence, and I knew what the testimony would be. And I told you it was going to be ugly, what you were going to hear was . . . going to . . . trigger in you your instincts, protection of the public."

Further, Reeve's testimony about the extraneous conduct—which was summarized by Detective Howard without objection and referenced in Guzman's recorded calls from jail—had nothing to do with Guzman's defense at trial, i.e., that the gun found on him was not a deadly weapon because it did not have ammunition with it when it was inventoried by police.

Finally, Guzman's contention that Reeve's extraneous-conduct testimony painted him as a "criminal on a rampage" is not persuasive. Even without Reeve's testimony, the jury heard the evidence relating to Guzman's three charged offenses against two different victims, Gilardi and Gueorguiev, which were consolidated for trial without objection from the defense. Consolidation of these offenses, which occurred within two days of each other, could have had essentially the same effect of which Guzman complains, such that admission of Reeve's testimony did not influence the jury, or did so only slightly, in determining Guzman's guilt. *See Motilla*, 78 S.W.3d at 355. Accordingly, we overrule Guzman's issue complaining about the admission of that extraneous-conduct evidence.

**CONCLUSION**

We affirm the district court's judgments of conviction.

_____

Jeff Rose, Chief Justice

Before Chief Justice Rose, Justices Pemberton and Field

Affirmed

Filed:   August 3, 2018

Do Not Publish

9